UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-11475-GAO

JOSHUA WORTMAN and KATHY FITCH,
individually and on behalf of all others similarly situated,
Plaintiffs,

v.

LOGMEIN, INC. and LOGMEIN USA, INC.,
Defendants.

OPINION AND ORDER
August 29, 2022

O'TOOLE, D.J.

The plaintiffs Joshua Wortman and Cathy Fitch have brought this putative class action against LogMeIn, Inc. and LogMeIn USA, Inc., collectively referred to herein as "LogMeIn." LogMeIn offers remote cloud-based services, including "join.me" and "Pro," that allow users to share documents through the internet. The plaintiffs allege that, after they initially subscribed to LogMeIn's remote cloud-based services, LogMeIn renewed their subscriptions at higher prices than the ones they had initially agreed to. The plaintiffs further allege that they would not have subscribed to the services had they known that their subscriptions would be renewed at higher prices. They claim that LogMeIn's autorenewal practices violate Massachusetts General Laws Chapter 93A, which prohibits unfair and deceptive business practices. The plaintiffs have moved to certify their proposed class. For the reasons detailed below, their motion is denied.

**I.    Standard for Class Certification**

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to

prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (emphasis in original). To qualify for class certification under Rule 23, a plaintiff must demonstrate that: 1) there are so many class members that joinder of all members is impracticable; 2) common questions of law or fact exist among the class members; 3) the named plaintiff's claims or defenses are typical of those of the class; and 4) the named plaintiff will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a). In addition to meeting those prerequisites, a putative class action plaintiff must satisfy at least one of three sub-parts of Rule 23(b). Id. 23(b).

In this case, the plaintiffs contend that they satisfy Rule 23(b)(3), which authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Id. 23(b)(3). In making (or not making) such a finding, a court must consider individual class members' interests in separate actions, the effect of any pre-existing litigation on the issue, the unique suitability of the forum, and any expected difficulties in managing the class action.[1] Id.

---

[1] Chapter 93A has a more lenient certification standard than Rule 23(b)(3). It does not require a class proponent to show that common issues of law or fact predominate over other issues, or that a class action is the best available method for resolving the dispute. Mass. Gen. Laws ch. 93A, § 9. In addition to arguing that they satisfy Rule 23(b)(3), the plaintiffs claim that Rule 23(b) does not govern class actions brought under Chapter 93A, and that Chapter 93A's more lenient standard should instead apply. Class certification, however, is a procedural issue, and Rule 23 is an on-point, valid procedural rule. Consequently, the federal procedural rule clearly governs. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 398 (2010) (declining to "wade into Erie's murky waters unless the federal rule is inapplicable or invalid" and noting that Rule 23 properly applies to class certification disputes).

## II.     Commonality and Typicality Under Rule 23(a)

The plaintiffs do not satisfy the second and third elements of Rule 23(a). They have not demonstrated that common issues of law or fact exist within the proposed class, nor have they shown that their own claims are typical of those of the class.

The commonality requirement hinges not on "the raising of common 'questions'—even in droves—but rather, [on] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." Wal-Mart Stores, 564 U.S. at 350 (emphasis in original) (citation omitted). "In other words, the commonality requirement is met where the 'questions that go to the heart of the elements of the cause of action' will 'each be answered either 'yes' or 'no' for the entire class' and 'the answers will not vary by individual class member.'" Garcia v. E.J. Amusements of N.H., Inc., 98 F. Supp. 3d 277, 285 (D. Mass. 2015) (quoting Donovan v. Philip Morris USA, Inc., No. 06-12234-DJC, 2012 WL 957633, at *21 (D. Mass. Mar. 21, 2012)).

Similarly, to demonstrate typicality, a plaintiff must show that he or she is part of the described class because he or she possesses the same interest and has suffered the same injury as the theorized class members. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982). The claims of a class representative are properly regarded as "typical" of those of the class when the representative's injuries "arise from the same course of conduct as do the injuries that form the basis of the class claims . . . ." Modell v. Eliot Sav. Bank, 139 F.R.D. 17, 22 (D. Mass. 1991). Since typicality and commonality both "serve as guideposts for determining whether . . . the named plaintiff[s'] claim[s] and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence[,]" they "tend to merge." Gen. Tel. Co. of Sw., 457 U.S. at 157 n.13.

3

The record shows that LogMeIn's policies and practices regarding renewal notifications and refunds differed from customer to customer. Many class members, including Fitch, received a renewal notice informing them of the price increase; others, including Wortman, received no such notice. Wortman and Fitch both requested some form of refund but were denied the request, while other customers requested and received full or partial refunds. Others still never requested a refund at all, but simply sought to cancel their subscriptions with varying degrees of success.

The class members' alleged injuries also vary significantly. Some class members, like Wortman and Fitch, were dissatisfied when their subscriptions renewed at a higher price, but others continued using the products after renewal without complaint. Among those who complained, some did so immediately after receiving notice of the first renewal, and some waited until after multiple renewal periods before contacting customer service. Some customers received full refunds, some received partial refunds, and some received no refund at all. Absent a painstaking individualized inquiry, there is no manageable way for this Court to determine which consumers are like Wortman and Fitch and which are not. See Edquist v. Bidz.com, Inc., No. 09-11638-GAO, 2013 WL 1290130, at *1–2 (D. Mass. Mar. 29, 2013); Vaccariello v. XM Satellite Radio, Inc., 295 F.R.D. 62, 68 (S.D.N.Y. 2013) ("Whether a customer requested, wanted, or approved renewal of their subscription is not amenable to being proven through class-wide proof.").

It would also be inappropriate to impute injury to the entire proposed class by inference. The plaintiffs argue that their common injury inheres in LogMeIn's conduct—consumers paid a higher price than the initial contract price because LogMeIn raised the price upon renewal. Chapter 93A, however, requires proof of an identifiable injury that is distinct from the alleged unfair or deceptive practice itself. Shaulis v. Nordstrom, Inc., 865 F.3d 1, 10 (1st Cir. 2017) ("To state a viable claim [under Chapter 93A], the plaintiff must allege that she has suffered an 'identifiable

harm' caused by the unfair or deceptive act that is separate from the violation itself." (quoting Tyler v. Michaels Stores, Inc., 984 N.E.2d 737, 745 (Mass. 2013))).

In a different case, a court might legitimately find that a vast majority of class members were injured simply by paying a higher price than a competitive market would yield. See In re Nexium Antitrust Litig., 777 F.3d 9, 18–21 (1st Cir. 2015). Here, however, there is no basis to assume that the renewal price paid by each individual consumer (renewal prices differed between class members during the relevant period) was not a good value to that consumer or commensurate with a competitive price. Indeed, a critical inquiry when evaluating injury in Chapter 93A cases is whether the allegedly unlawful practice harmed buyers "in any material respect." Abruzzi Foods, Inc. v. Pasta & Cheese, Inc., 986 F.2d 605, 605 (1st Cir. 1993); see also Lee v. Conagra Brands, Inc., 958 F.3d 70, 75–77 (1st Cir. 2020). In this context, materiality will differ between consumers. The fact that some consumers were not bothered by the price increase is evidence that the price increase was not necessarily "material" to renewal decisions by class members generally.

This case revolves around LogMeIn's interactions with its customers pre- and post-renewal. Because LogMeIn applied its renewal policies inconsistently among the "class" of subscribers, and because those interactions varied significantly from customer to customer, a wide range of experiences and alleged harms is represented within the class. Those intra-class variations preclude class certification.

### III.    Predominance and Superiority Under Rule 23(b)

The plaintiffs fail to satisfy Rule 23(b)(3) for many of the same reasons. Factual differences among putative class members would make a class action less desirable than individual actions for many of them. See Fed. R. Civ. P. 23(b)(3)(A). Further, while this Court is certainly well-suited to decide questions of Massachusetts law, and while LogMeIn has a principal place of business in

Massachusetts, the facts of this case do not relate only to Massachusetts; the class is nationwide, the conduct complained of occurred mostly online, and LogMeIn is incorporated in Delaware. See id. 23(b)(3)(C). Even if Massachusetts' connections to this case militate narrowly in favor of class certification, they alone cannot satisfy Rule 23(b)(3) when the other factors all cut the other way.

Finally, the factual differences between class members would make the management of a class action difficult, if not practically impossible. See id. 23(b)(3)(D). Indeed, "absent . . . some other mechanism that can manageably remove uninjured persons from the class in a manner that protects the parties' rights," this Court would be forced to conduct a detailed inquiry into each proposed class member. In re Asacol Antitrust Litig., 907 F.3d 42, 53–54 (1st Cir. 2018) (denying motion to certify class and noting that "this is not a case in which a very small absolute number of class members might be picked off in a manageable, individualized process at or before trial"). To effectively identify an appropriate class, this Court would at least need to determine: 1) whether each individual customer received notice of renewal; 2) whether they received a refund, full or partial; and 3) whether they requested, approved of, or objected to the renewal. Other lines of inquiry might also become necessary. Those individualized questions would overshadow any common questions and render judicial administration impracticable. A class action is not a superior mechanism for adjudicating this controversy.

## IV.   Conclusion

The plaintiffs have failed to satisfy the requirements for class certification articulated in Rules 23(a) and 23(b)(3). Plaintiffs' Motion for Class Certification (dkt. no. 63) is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.<br>
United States District Judge